GENERAL MOTORS CORPORATION, a corporation of the State of Delaware, Employer, Appellant, v. VITO SOCORSO, Claimant, Appellee.

(*September* 17, 1953.)

Carey, J., sitting.

*Rodney M. Layton* (of Richards, Layton and Finger) for appellant.

*Albert J. Stiftel* for appellee.

Superior Court for New Castle County, No. 655, Civil Action, 1952.

CAREY, J.:

The only question before the Court is the propriety of the award for medical and hospital services.

The pertinent statutory provisions are found in 6078 *Revised Code* 1935, as amended, 19 *Del. C.* §§ 2321 to 2323, 2346, 2353. Paragraph (b), 19 *Del. C.* § 2322(a, b), requires the employer to furnish reasonable medical attention during the first thirty days of the injury. If the employer refuses, the employee may procure the same and hold the employer responsible therefor.

Paragraph (c) reads in part as follows:

"Upon application made to the Board by the injured employee or some one in his behalf, the Board may, in its discretion, require the employer to furnish additional surgical, medical, and hospital services, medicines and supplies, as and when needed, for such further period as it shall deem right and proper * * * provided, however, the Board shall at all times have jurisdiction to determine, and shall determine, the character of services and supplies to be furnished. 19 *Del. C.* § 2322(c)."

Paragraph (f), 19 *Del. C.* § 2323, authorizes the Board to permit, upon application in writing, an employee to engage a physician of his own choice at the employer's expense.

In the present instance, the appellant maintained on its own premises an infirmary or dispensary in charge of a medical doctor with one or more registered nurses. It appears to have been customary for employees to get treatments at this infirmary for their injuries or illnesses, regardless of the cause thereof and regardless of whether or not they were compensable. Immediately after his accident on January 31st and almost daily thereafter, claimant was treated at this infirmary under the doctor's supervision for his back injury. This continued until about March 20th. Some time about the middle of February, he visited on his own accord a chiropractor two or three times. This was done without the prior consent of the employer or the Board. On or about March 3d, without the consent of the employer and without obtaining permission from the Accident Board, he visited his family doctor who referred him to a specialist. Eventually the specialist diagnosed the trouble as a ruptured disc. About April 1st, he ceased working and shortly thereafter he went to a hospital, where the specialist put him in a cast.

The Board found that the claimant did not report the occurrence of the accident on January 31st. The undisputed testimony shows, however, that it was reported to the proper officer of the employer no later than February 21st.

Much space in the briefs is devoted to the question of whether the claimant was within his rights in obtaining outside medical aid. For reasons which will become manifest hereafter, I shall pass over this point, save for the visits to the chiropractor. Those visits occurred during the first thirty days of the injury during which period of time he was receiving treatments from the employer's physician. I can find nothing whatever in the record to justify charging the employer for them. They were made on the employee's own volition without the consent of either the employer or the Accident Board, at a time when the employer had not refused to provide medical attention, and at a time when the employee had not given any indication to the employer of dissatisfaction with the attention he was re-

ceiving. The award made must be modified to exclude any charges for this service.

█ In the rulings of law made by the Board and included in the present record, no reference whatever is made to paragraphs (c) and (f). The only reference concerning medical benefits is to paragraph (b). As indicated above, that paragraph deals only with the services to be provided during the first thirty days of the injury. Aside from the chiropractic treatments, the record clearly discloses that all treatments involved in the present appeal were rendered after the expiration of the thirty-day period. During that time, the employer did provide medical attention without charge, notwithstanding its later denial of liability, and the claimant sought no outside aid save that of the chiropractor. It is clear, therefore, that the Accident Board erroneously based its medical award upon an inapplicable section of the law, and, if no other provision were applicable, the award would have to be reversed. In my opinion, however, it may be that a portion of the award is proper under the quoted parts of paragraph (c). Determination of that question ought to be made by the Board in the first instance because it involves the exercise of discretion. That is a proper /function of the Board, not of this Court.

█ It is suggested by the appellant that paragraph (c) cannot be relied upon here because the appellee made no application to the Board for services rendered after the thirty-day period. I must agree with this contention in so far as it applies to those services rendered prior to March 26. *Pickens v. State Workmen's Insurance Fund,* 140 *Pa. Super.* 258, 13 *A.* 2d 896; *Carbonneau v. United States Casualty Co.,* 97 *N. H.* 438, 91 *A.* 2d 449. This part of the Act has prospective rather than retrospective effect. The Act clearly makes the application a prerequisite to the furnishing of additional service by the employer (unless, of course, he agrees to provide them). It does not contemplate an award for services rendered before application is made.

In opposing the foregoing view, the appellee suggests that, in a case like this, the thirty-day period "of the injury" as used in Section 8(b) would not begin to run until the date of the actual discovery of the type of injury. This, he says, was on or about March 21 when the specialist made the diagnosis of a ruptured disc. The only case cited in support of this argument is *Millspaugh & Irish Co. v. Lunte*, 82 *Ind. App.* 143, 144 *N. E.* 147. There, the original diagnosis was that of a suppurated gland and the final diagnosis of hernia was not made for several months. That case differs from the present one because it was not until the final diagnosis that the traumatic basis of the injury was determined. In the present case, according to the testimony of the claimant himself, the traumatic cause of his injury was known from the start; it was only the extent of that injury which remained in doubt.

Appellee also suggests that the employer waived its rights under Section 8(c). I find no acceptable basis for this suggestion.

Turning now to those services rendered after March 26, it is true that the petition filed with the Board on that date makes no express mention of a desire for additional medical attention. It is headed "Petition to Determine Compensation Due to Injured Employee". It recites that the claimant and the employer have failed to reach an agreement in regard to compensation due the claimant, and prays that the Board hear and determine the matter in accordance with the facts and the law. I construe this language as being broad enough to include a prayer for further treatments. It must be remembered that, on the date this petition was filed, Socorso had lost no time from work. Apparently the only dispute then existing was whether the employer should be compelled to pay for additional medical attention. It seems clear, therefore, that this was the main, if not the sole purpose of the petition and must have been so understood by the employer. That being true, the employer was not harmed or misled by any defect in the form of the petition. Later events, of course, made it necessary for the Board to determine the amount of compensation for lost time in addition

to medical benefits. In proceedings before the Board, it can hardly be expected that technical niceties of pleading will be observed and, where the informality thereof works no substantial injustice to the other party, it should not be allowed to defeat an otherwise meritorious claim. 2 *Larson's Workmen's Compensation Law* 252.

Nothing said herein is intended to hold that the Board must necessarily award medical benefits for the period commencing on March 26. The case must be remanded to the Board because it relied upon Section 8(b) instead of determining the matter under Section 8(c). This subdivision gives the Board considerable discretion, and it is the failure to exercise that discretion which requires the remand for further proceedings in accordance with the terms of that paragraph.

An appropriate order should be submitted.

### Supplemental Opinion On Reargument

CAREY, J.:

Reargument was granted for the purpose of considering further that part of the original opinion which directed a remand for further proceedings under paragraph (c) of 6078 *Revised Code of* 1935 as amended. Appellant's argument is that such a remand is improper since the Industrial Accident Board will be without jurisdiction to entertain further proceedings under that paragraph. The argument is based upon the language of the Section which, appellant contends, confers no jurisdiction upon the Board to require an employer to provide additional services and supplies unless the character thereof is determined by the Board prior to the furnishing thereof.

In this case, the petition for additional medical attention was filed on March 26, 1952. The employee actually obtained the services for which he now seeks reimbursement during the period commencing very shortly after April 1st of that same year. The matter was not heard by the Board until May 8th and its order was entered on July 31st. Under appellant's argument,

in order to compel the employer to pay for the services, the employee would have been obliged to await the Board's action before obtaining them.

The contention now advanced is based particularly upon the last clause of the Section which reads: "provided, however, the Board shall at all times have jurisdiction to determine, and shall determine, the character of services and supplies to be furnished". Considerable reliance is placed upon the words "to be furnished" as indicating the legislative intent to require a prospective determination and order, and to forbid a retrospective determination. The problem is one of statutory construction and no cited precedent is very helpful.

In *Carbonneau v. United States Casualty Co.*, 97 *N. H.* 438, 91 *A.* 2d 449, 450, it was held that the Commissioner was correct in refusing " 'to authorize retroactivity for medical benefits' ", by which was meant payment for services rendered prior to the application. He had also denied future benefits for a reason which the Supreme Court said was invalid. As to these, it was held that he had the discretionary power to make an award and, since it appeared that he had acted under a misapprehension concerning his authority and hence without exercising his discretion, the case was remanded for further hearing, notwithstanding the fact that the services had been rendered in the meantime.

In *Pickens v. State Workmen's Insurance Fund*, 140 *Pa. Super.* 258, 13 *A.* 2d 896, the Court held that the employer was not liable for additional medical expenses obtained prior to the date of the application therefor, but that the Board had the power to require payment for additional services rendered thereafter. In that case, the application was filed on February 2d, 1939, but the Board did not make its order until May 3d. The order included treatments received in the interim.

The New Hampshire and Pennsylvania statutes differ from the Delaware law, and these cases are not necessarily precisely in point. They are cited simply for the reason that they more

nearly approach the present case in their factual situation than any others I have seen.

 It has been pointed out that the sections of the Workmen's Compensation Law which deal with medical benefits are for the mutual benefit of employer and employee, and the legislative purpose was (1) to insure employer against unreasonable charges and against fraudulent claims, (2) to insure at all times adequate medical assistance to the employee. *McCormick Transportation Co. v. Barone,* 8 *Terry* 202, 89 *A.* 2d 160. There are, of course, many times when it is utterly impossible for anyone to predict what additional services an injured employee is going to need; moreover, instances doubtless occur where it would be utterly impossible for a hearing to be held on an application before the services are required. From the point of view of the employee, therefore, the benefits conferred by this paragraph would often be utterly meaningless if it can be invoked only when the Board is able to hold a hearing and make its determination prior to the rendering of the services.

On the other hand, the interest of the employer would seem to be amply protected by the filing of the application. He then knows what the employee wants and has the opportunity to investigate the matter and determine whether the demand is justified. The Board has ample power, regardless of the time of hearing, to protect the employer against unreasonable charges. In the situation where the employer denies all liability under the Act, as was true here, he would hardly appreciate being ordered to pay for medical services without first having the case determined on the merits. Frequently, it would be impossible to hold such a hearing until the employee's recovery. From the viewpoint of the employer, therefore, this paragraph, as interpreted by the appellant, could work considerable hardship.

It should not be lightly presumed that the Legislature intended to set up a procedure which could so easily destroy a right given to the employee or could deprive the employer of necessary protection. It is more reasonable to believe that the

Legislature used the phrase "to be furnished" as being synonymous with the words "which shall be supplied or paid for by the employer". Certainly, the phrase is susceptible of that construction and, in my opinion, it should be so construed. The view expressed in the original opinion herein will, therefore, be adhered to.