

FILED

January 23, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:05 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Will Careathers                     DOCKET #: 2014-01-0016

EMPLOYER: Cardin Forest Prod's, LLC           STATE FILE #: 65837-2014

CARRIER: Employer's Risk Services             DATE OF INJURY: August 11, 2014

## EXPEDITED HEARING ORDER DENYING REQUEST FOR BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Employee, Will Careathers. On November 14, 2014, Employee filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239(d), to determine if the provision of medical and temporary disability benefits is appropriate.

A telephonic Expedited Hearing was conducted by the undersigned Workers' Compensation Judge on January 14, 2015. Employee participated without counsel. Attorney Lee Anne Murray represented Employer, Cardin Forest Products, LLC (Cardin), and its workers' compensation carrier, Employer's Risk Services. Considering the positions of the parties, the applicable law, the testimony of Mr. Careathers, the exhibits admitted into evidence during the hearing, and the entire record, this Court hereby finds that Mr. Careathers is not entitled to the medical and temporary disability benefits he requests.

### ANALYSIS

#### Issue

Whether Mr. Careathers' hiatal hernia arose primarily out of and in the course and scope of employment.

#### Evidence Submitted

Mr. Careathers was the only witness who testified. The following exhibits were introduced into evidence at the Expedited Hearing:

1

- Exhibit 1—Records of Central Drug Store (2 pages);
- Exhibit 2—Records of Dr. Charles R. Adcock (12 pages);
- Exhibit 3—Affidavit of Dr. Charles R. Adcock and attachments thereto (6 pages);
- Exhibit 4—Affidavit of Ruth Cardin and attachments thereto (21 pages);
- Exhibit 5—Documentation of Cardin's status as a Drug-Free Workplace (4 pages); and
- Exhibit 6—Notice of Denial of Claim (1 page).

The Court designated the following as the technical record:

- Petition for Benefit Determination filed September 24, 2014;
- Request for Expedited Hearing filed November 14, 2014;
- Dispute Certification Notice filed November 17, 2014;
- Motion for Extension of Time of Cardin filed November 20, 2014;
- Petition for Benefit Determination (discovery) of Cardin filed November 24, 2014;
- Order filed December 8, 2014.

The Court did not consider documents attached to the above-designated filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

### History of Claim

On August 11, 2014, Mr. Careathers reported to management personnel at Cardin that he developed pain in his midsection while lifting heavy pieces of wood in the course and scope of his employment. Cardin referred Mr. Careathers to Dr. Charles R. Adcock, a general practitioner in South Pittsburgh, Tennessee. Mr. Careathers saw Dr. Adcock on the date of injury.

Cardin is a certified Drug Free Workplace as defined by the Tennessee Workers' Compensation Act. In furtherance of its rights under the Drug Free Workplace provision, Cardin instructed Dr. Adcock to conduct a post-accident drug test. Prior to the administration of the test, Mr. Careathers advised Dr. Adcock that, at the time of the injury, he had taken prescribed dosages of "Roxycontin." Pending the drug test results, Cardin authorized Mr. Careathers to undergo a CT scan. The scan revealed a small hiatal hernia.

On August 25, 2014, Cardin was notified that Mr. Careathers' drug test was positive for Oxycodone and Oxymorphone. On August 27, 2014, Cardin and its workers' compensation carrier denied Mr. Careathers' workers' compensation claim on the basis of the positive drug test results. Mr. Careathers filed a Petition for Benefit Determination and, later, a Request for Expedited Hearing seeking medical and temporary disability benefits.

2

## Employee's Contentions

Mr. Careathers contends that he suffered a hernia while lifting heavy pieces of wood in the course and scope of his employment by Cardin. He asserts that his job requires daily heavy lifting, which he performed without limitation until he suffered the hernia.

Mr. Careathers asserts that he told Dr. Adcock that he was taking prescribed dosages of pain medication prior to the administration of the post-injury drug test. Mr. Careathers contends that his workers' compensation claim should not be barred because he tested positive for taking medication which was prescribed to him by a doctor.

Mr. Careathers claims that Cardin did not provide him a panel from which to select an authorized treating physician. He asks that Cardin be ordered to submit a panel from which he can select a physician for further treatment of his hernia. Mr. Careathers also argues that, from the date of injury to the present, his hernia has totally disabled him from working. Accordingly, he seeks temporary disability benefits from the date of injury until a panel doctor releases him to return to work without restrictions.

## Employer's Contentions

Cardin contends that Mr. Careathers is not entitled to workers' compensation benefits because he was under the influence of narcotic medication when he incurred injury. Cardin also argues that Mr. Careathers' claim should be barred because it did not arise primarily in the course and scope of his employment. In support of the latter position, Cardin submits the sworn medical opinion of Dr. Adcock, who opined that heavy lifting did not cause Mr. Careathers' hiatal hernia.

Alternatively, Cardin argues that Mr. Careather's claim for additional medical benefits is without merit, citing Dr. Adcock's opinion that Mr. Careathers' hernia does not require additional treatment. Cardin also contends that Mr. Careathers' claim for temporary disability benefits should fail because he did not accept available light duty work. Lastly, Cardin asserts that, when he reported his injury, it told Mr. Careathers it would compile a panel of physicians in addition to Dr. Adcock from which to select an authorized treating physician. Cardin claims that Mr. Careathers declined the panel and choses to see Dr. Adcock immediately.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

When determining whether to award benefits, a workers' compensation judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

3

*Factual Findings*

Upon consideration of Mr. Careathers' testimony, the exhibits introduced as evidence, the arguments of the parties, and the entire record in this claim, the Court finds:

- that Mr. Careathers did not establish by medical expert opinion that his hiatal hernia arose primarily in the course and scope of his employment;
- that Cardin would have provided Mr. Careathers a panel of physicians from which to select an authorized treating physician had he not chosen to see Dr. Adcock immediately; and
- that Mr. Careathers selected Dr. Adcock as his authorized treating physician and did not ask Cardin to provide him a panel.

*Application of Law to Facts*

*Panel Issue*

Mr. Careathers testified at the Expedited Hearing that Ruth Cardin, the management representative to whom he reported his work injury, did not offer him a panel from which to select an authorized treating physician. While he testified that Ms. Cardin mentioned only Dr. Adcock as a treatment option, Mr. Careathers also testified that she offered to obtain a panel of physicians but did not do so. Mr. Careathers now contends that, by law, Cardin must provide him a panel from which to select a physician authorized to treat his hiatal hernia.

The affidavit of Ruth Cardin supplements Mr. Careathers' testimony on the process in which Dr. Adcock was selected as authorized treating physician. Ms. Cardin stated in her sworn affidavit that she "offered him [Mr. Careathers] a choice to see… doctors [other than Dr. Adcock], but he said it didn't matter where he was seen." She further stated that she scheduled an appointment with Dr. Adcock "so that he [Mr. Careathers] could be seen on the date of the alleged incident." The evidence introduced at the hearing indicates that Dr. Adcock, who practices in the same town in which Cardin operates, saw Mr. Careathers on the date of injury (Exhibit 2, page 7).

Mr. Careathers did not rebut the details sworn to by Ms. Cardin. He did not testify that he contemporaneously objected to the procedure Ms. Cardin utilized in authorizing treatment by Dr. Adcock. Mr. Careathers admitted that Ms. Cardin offered to provide a panel which included names of authorized physicians other than Dr. Adcock, but did not testify that he specifically asked Ms. Cardin to provide those names. Mr. Careathers did not rebut the statement in Ms. Cardin's affidavit that he chose to see Dr. Adcock because he could be seen immediately. Lastly, Mr. Careathers did not testify that, in his opinion, Dr. Adcock provided inadequate treatment.

Tennessee Code Annotated section 50-6-204(3)(A)(i) (2014) contemplates that an injured worker shall select the authorized treating physician from a panel of three (3) physicians. In this claim, the Court finds that the above-cited provision was technically violated. However, the

4

Court finds that Cardin did not direct Mr. Careathers to a specific physician without offering alternative treatment options. Based on the testimony of Mr. Careathers and the information sworn to by Ruth Cardin, the Court finds that Cardin offered Mr. Careathers the option of seeing a local physician immediately or waiting for a panel which might contain out-of town doctors who could not see him immediately. The Court finds that, in lieu of waiting for a panel, Mr. Careathers accepted Dr. Adcock as his authorized treating physician.

By its specific terms, the Tennessee Workers' Compensation Act does not require that, where an employer provides medical treatment for a work injury without first offering the injured worker a panel, the employer must automatically provide a panel if the injured worker wishes to change treating physicians. An injured worker's right to change physicians or seek unauthorized care has generally been found to depend on the facts and equities of each given claim. See generally, *Manley v. Jefferson County,* 207 Tenn. 648, 343 S.W.2d 358 (1960), holding that an injured worker could not recover for unauthorized chiropractic treatment when, without a panel being offered, the worker accepted treatment from a physician who was competent to treat his injury.

The Court further finds that, under the circumstances in this claim, Mr. Careathers is not entitled to select a new treating physician from a panel. While Tennessee Code Annotated section 50-6-204(a)(3)(D)(ii) (2014) does not technically apply, the Court finds the spirit of that provision persuasive. Section 204(a)(3)(D)(ii) provides that an employee who accepts treatment by a physician selected from a panel is not entitled to a new panel simply because he did not sign the original panel form. Mr. Careathers selected Dr. Adcock as the authorized treating physician instead of waiting for the provision of a panel so that he could receive immediate treatment. Accordingly, the Court denies Mr. Careathers' request to select a new treating physician selected from a panel.

*Causation*

In setting forth which injuries or conditions are covered by the Tennessee Workers' Compensation Act, Tennessee Code Annotated section 50-6-102(13) (2014) defines a compensable "injury" or "personal injury" as: "an injury by accident…arising primarily out of and in the course and scope of employment." Tennessee Code Annotated sections 50-6-102(13)(A), (D), and (E) (2014) set forth that the compensability of the claimed injury must be established by expert medical opinion.

At the hearing, Mr. Careathers testified that he pulled a muscle in his midsection while lifting heavy pieces of wood. In his office visit of August 11, 2014, Dr. Adcock documented Mr. Careathers' report of pain as follows: "[A]pparently today was lifting a heavy log and he strained something in his mid stomach (as he calls it) area." (Exhibit 2, page 7). Based on this history, Dr. Adcock arrived at an impression that the source of Mr. Careathers' symptoms was "[A]bdominal wall strain versus hernia, yet to be determined." CExhibit 2, page 7). Dr. Adcock ordered a CT scan of the abdomen, which was normal except for the presence of a small hiatal hernia. (Exhibit 2, page 2).

In his affidavit, Dr. Adcock wrote: "[I]n my opinion, the type of hernia Mr. Careathers

5

has would not be caused by lifting." Mr. Careathers offered only his own lay testimony to rebut Dr. Adcock's opinion. As stated above, the Tennessee Workers' Compensation Act itself requires that an injured worker establish by expert medical opinion that an injury or condition is work-related. Mr. Careathers' failure to rebut Dr. Adcock's adverse causation opinion with the opinion of another physician necessitates that the Court find that, at this time, Mr. Careathers did not establish that his hiatal hernia arose primarily out of and in the course and scope of employment. Accordingly, the Court denies Mr. Careathers' request for additional medical and temporary disability benefits.

The Court is mindful that Cardin raised other issues in defense of Mr. Careathers' claim, including defenses under the Drug-Free Workplace provisions of the Tennessee Workers' Compensation Act. The Court's finding that Mr. Careathers did not establish the work-relatedness of his claim makes it unnecessary to determine the other issues raised by Cardin.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Careathers is not entitled to the benefits he requests.

2. This matter is set for Initial Hearing on March 9, 2015, at 10:00 a.m. Eastern Standard Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance, if any, with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

Initial Hearing:

An Initial Hearing has been set with Judge Thomas Wyatt, Court of Workers Compensation Claims, on March 9, 2015, at 9:00 a.m. Eastern Standard Time. You must call 615-741-2051 or toll free at 855-747-1721 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date and time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

6

ISSUED AND FILED WITH THE COURT OF WORKERS' COMPENSATION CLAIMS ON THE DAY OF JANUARY, 2015.

Judge Thomas Wyatt
Tennessee Court of Workers'
Compensation Claims
540 McCallie Avenue, Suite 600
Chattanooga, TN 37402

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the  day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| **Will Careathers** | X | | | | | **Mr. Will Careathers, 3918 McDowell Street, Chattanooga, TN 37411** |
| **Lee Anne Murray, Atty.** | | | | | X | **leeamurray@feeneymurray.com** |

**Thomas Wyatt**
**Workers' Compensation Judge**