## In The Matter of Arbitration Between Laborers' District Council of Eastern Pennsylvania and Local 1174, Laborers' International Union of North America AFL-CIO and Anastasi Brothers Corp.

*Charles W. Johnston,* for petitioners.
*Roger D. Susanin,* for respondent.

GARDNER, *J.,* March 8, 1985 — This matter comes before the court on Application for Appointment of Arbitrator brought by petitioners, Laborers' District Council of Eastern Pennsylvania and Local 1174, Laborers' International Union of North America, AFL-CIO (petitioners). The application is made pursuant to section 7305[1] of the Uniform Arbitration Act.[2] Respondent, Anastasi Brothers Corpora-

---

1. 42 Pa. C.S. §7305. Appointment of arbitrators by court.

If the agreement to arbitrate prescribes a method of appointment of arbitrators, the prescribed method shall be followed. In the absence of a prescribed method or if the prescribed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act or is unable to act and his successor has not been appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of an arbitrator specifically named in the agreement.

2. 42 Pa. C.S. §7301-7320.

tion, argues that the Uniform Arbitration is inapplicable to this action and, therefore, the application must be denied. For the reasons which follow, we disagree with respondent and grant petitioners' application.

Respondent, as a member of the Mason Contractors Association of America, Inc., is a party to a collective bargaining agreement between the Mason Contractors Association and petitioners, known as the "International Agreement."[3] The agreement was effective from November 1, 1979 through October 31, 1982. Article X, Grievance Machinery, of the agreement incorporates by reference a collective bargaining agreement between petitioners and General and Sub-Contractors Associations ("local" agreement).[4] Article X provides that "[w]here local agreements have been agreed upon through bona fide collective bargaining and where such agreements provide procedure for handling of grievances . . . such procedures shall be the means by which grievances shall be handled. . . ." Article VIII of the "local" collective bargaining agreement provides, in relevant part:

"Section 2. A Joint Arbitration Board shall be formed comprised of two members of the General or Sub Contractors and two members of the Laborers' District Council of Eastern Pennsylvania, to which all grievances that arise shall be submitted. This arbitration board shall meet within 48 hours, after written complaint has been filed (Saturday, Sunday and holidays excepted). The disputants shall be allowed 24 hours to present all evidence; and a deci-

---

3. Exhibit A to petitioners' Application for Appointment of Arbitrator.

4. Exhibit B to petitioners' Application for Appointment of Arbitrator.

sion shall be rendered by the Arbitration Board within 48 hours. In case the arbitration board does not mutually agree, a fifth party shall be appointed by the four members of the Joint Arbitration Board, and this Committee of five shall meet within 24 hours and render a decision within 48 hours. Any decision by this Committee of five shall be final and binding upon both parties. Any expense incurred by the fifth member shall be borne by both parties to this agreement."

The underlying dispute between the parties occurred during the effective time period of the agreement, when respondent prepared and submitted a bid for the masonry work on a project known as Luther Crest, located at the intersection of Routes 22 and 309, South Whitehall Township, Lehigh County, Pennsylvania. In preparing its bid, respondent discovered that the laborers' work was covered by two collective bargaining agreements between the Lehigh Valley Contractors Association, formerly General Contractors Association of Lehigh Valley, Inc., and petitioners. One agreement was a "Residential Agreement"[5] and the other the "Commercial Agreement". Article IX of the Residential Agreement covers "residential work". Article V of the International Agreement[6] required respondent to con-

5. Exhibit A to brief on behalf of respondent, Anastasi Brothers Corporation, in opposition to petitioners' Application for Appointment of Arbitrator.

6. ARTICLE V—Wages and Working Conditions.

"When the employer enters into an area where wages, hours and working conditions have been agreed upon through bona fide collective bargaining, the employer will be presented such evidence by the union and the employer will conform his operations accordingly, except that all jurisdictional issues and/or disputes shall be resolved under the provisions of Arti-

form its operation to the applicable collective bargaining agreement. Respondent's belief was that Luther Crest was a residential project. Therefore, respondent utilized the residential agreement in preparation of its bid.

Subsequent to commencement of the project, a dispute arose between petitioners and respondent over use of the residential agreement. Petitioners contended that respondent should have utilized the commercial agreement which provided for different terms and conditions of employment than the residential agreement.

In accordance with the grievance procedure contained in Article VIII the parties attempted to resolve and dispute through arbitration. A four-member joint arbitration board was selected but resolution of the matter was unsuccessful because their voting was deadlocked at 2-2. Petitioners and respondent were then unable to agree upon a fifth arbitrator. Whereupon petitioners filed the Application for Appointment of Arbitrator pursuant to §7305 of the Uniform Arbitration Act, requesting this court to appoint a fifth arbitrator, which is presently before the court for disposition.

cle III, paragraph 3 'Jurisdiction' of this International Agreement.

"After the employer's operation has commenced in any particular area, no subsequent change in wages or working conditions in such area will become effective insofar as the employer is concerned, except to the extent that any such change in wages or working conditions shall have been agreed upon and in accordance with the effective date agreed upon in negotiations between the Local Union having jurisdiction over the area and a recognized bargaining agency of contractors in such area."

Pennsylvania's statutes on arbitration[7] are divided into three subchapters. The Pennsylvania Uniform Arbitration Act is contained within subchapter A[8] entitled "Statutory Arbitration." Subchapter B[9] provides for "Common Law Arbitration" and subchapter C[10] for "Judicial Arbitration." Section 7302(a), Scope of subchapter, found in subchapter A, provides:

"(a) General rule.—An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and *expressly provides for arbitration pursuant to this subchapter or any other similar statute,* in which case the arbitration shall be governed by this subchapter. (Emphasis added.)

The agreement to arbitrate contained in Article VIII makes no reference to the Uniform Arbitration Act or any other similar statute. The agreement does not provide that a court may be petitioned for appointment of an arbitrator in the event of a dispute. Where no express agreement or other evidence exists that the act was intended to apply to the agreement to arbitrate in a collective bargaining agreement, the rules of common law arbitration apply. Western Kraft East, Inc. v. United Paperworkers International Union, Local 375, 531 F. Supp. 666, 669 (E.D., Pa. 1982); American Sterilizer Co. v. Local 832, 278 F. Supp. 637 (W.D., Pa. 1968); Keller v. Teamsters Local 249, 423 Pa. 353, 223 A.2d 724 (1966). Therefore, the within agree-

---

7. 42 Pa. C.S. §7301-7362.
8. 42 Pa. C.S. §7301-7320.
9. 42 Pa. C.S. §7341.
10. 42 Pa. C.S. §7361, 7362.

ment is one to arbitrate pursuant to the subchapter relating to common law arbitration.

There is no provision analogous to section 7305 in the rules of common law arbitration for court appointment of arbitrators. If this court were limited to the provisions of subchapter B concerning common law arbitration, we would be without authority to make such an appointment. Petitioners contend, however, that despite the application of common law arbitration, this court does not lack the power to appoint an arbitrator.

With the passage of the JARA Continuation Act of 1982,[11] the Pennsylvania legislature amended subchapter B by adding section 7342.[12] Section 7342, Procedure, provides in pertinent part: "(a) General rule. — The following provisions of subchapter A (relating to statutory arbitration) shall be applicable to arbitration conducted pursuant to this subchapter . . . section 7305 (relating to court appointment of arbitrators by court)." Petitioners contend that by the amendment, section 7305 is incorporated in and applicable to common law arbitration.

The effective date of the JARA Continuation Act was February 19, 1983. This action was instituted on November 5, 1982 by petitioners' filing of the Application for Appointment of Arbitrator. The general rule is that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.[13] Section 7342 contains no language addressing its retroactivity to actions prior

---

11. Act of December 20, 1982, P.L. 1409, no. 326, Art. II, §201, effective in 60 days.
12. 42 Pa. C.S. §7342.
13. 1 Pa. C.S. §1926.

to its effective date. However, petitioners argue that retroactive application of section 7342 is warranted.

Section 7342 is entitled "Procedure". The Statutory Construction Act provides, in pertinent part, that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."[14] Although we are not governed by the heading of "Procedure" in construing section 7342, we do find that court appointment of arbitrators relates more directly to the procedural rights rather than the substantive rights of the parties to an arbitration matter.

Petitioners contend that the courts of this Commonwealth have recognized an exception to the general rule of nonretroactively of statutes in finding that procedural law statutes operate retroactively. In Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 166, 110 A. 731, 732 (1920), the Supreme Court stated: "Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage. . . ." See Universal Cyclops Steel Corp. v. Krawczynski, 9 Pa. Commw. 176, 183, 305 A.2d 757, 761 (1973).

However, the Supreme Court in Kuca also stated that "[p]rocedure is a matter of statutory regulation, and, unless prevented by the Constitution, the legislature may alter it at will, provided the obligations of contracts are not impaired; . . . ." Kuca, 268 Pa. 166, 110 Atl. 732; see also, Noel v. Workmen's Compensation Appeal Board, 70 Pa. Commw. 567, 453 A.2d 724 (1982).

---

14. 1 Pa. C.S. §1924.

In the within action, the agreement provided a method for selection of a fifth arbitrator. The four member Joint Arbitration Board was unsuccessful in utilizing that method. The agreement is silent as to an appropriate alternative course of action to obtain a fifth arbitrator in such an event. In the absence of a prescribed method, we do not view the court's appointment of that arbitrator as an impairment of the parties' obligations. Rather, the court's intervention in this instance aids in effectuating the purpose of the contract, i.e., arbitration. To deny petitioners' application would, in effect, give the parties, no means of obtaining a resolution of the underlying dispute, as contemplated by the agreement. Such a result would be a greater impairment of contractual obligations than the relief afforded by the court.

For all the foregoing reasons, we find that section 7342 empowers this court to utilize the procedure for court appointment of arbitrators contained within section 7305. Accordingly, we grant petitioners' Application for Appointment of Arbitrator.

## ORDER

Now, March 8, 1985, upon consideration of petitioners' Application for Appointment of Arbitrator, after argument, upon consideration of the briefs of the parties, and for the reasons expressed in the accompanying opinion, it is ordered that petitioners' Application for Appointment of Arbitrator is granted.

It is further ordered, pursuant to 42 Pa. C.S. §7305 that William E. Schantz, Esq., is appointed as a fifth arbitrator to resolve the dispute between the parties which is the subject of this action.

It is further ordered, pursuant to Article VIII, section 2 of the collective bargaining agreement between petitioners and General and Sub-Contractors Associations, which agreement became effective May 1, 1981, that any expense incurred by the fifth arbitrator herein appointed shall be borne equally by both parties to this action.